THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **IRONSHORE SPECIALTY INSURANCE COMPANY,**<br><br>   **Plaintiff,**<br><br>v.<br><br>**KATHERINE SHAW BETHEA HOSPITAL,**<br><br>   **Defendant.** | **Civ. A. No. 1:20-cv-07434** |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff Ironshore Specialty Insurance Company ("Ironshore") files this Declaratory Judgment Complaint against Katherine Shaw Bethea Hospital ("Defendant" or "KSB") and avers as follow:

## NATURE OF THE CASE

1. This is an insurance coverage dispute. Ironshore brings this action to obtain a judicial determination regarding the parties' rights and obligations under a claims-made excess professional liability insurance policy that Ironshore issued to KSB.

2. Ironshore has disclaimed coverage in two underlying medical malpractice lawsuits pending against KSB because Ironshore was not provided notice of either matter until more than ninety days after the expiration of the policy period, in breach of the policy's condition precedent to coverage.

3. Nevertheless, KSB has requested that Ironshore participate in a mediation to resolve both underlying lawsuits, and at least one of the underlying plaintiffs has demanded a settlement amount that would require Ironshore to pay its entire limits.

4. A real and actual controversy exists between Ironshore and KSB.

5. Accordingly, Ironshore seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no obligation to indemnify KSB.

## PARTIES

6. Plaintiff Ironshore is a corporation organized under the laws of the State of Arizona with its principal place of business in the Commonwealth of Massachusetts.

7. Defendant KSB is an Illinois corporation with its principal place of business in Dixon, Illinois.

## JURISDICTION AND VENUE

8. Ironshore files this Complaint pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment. An actual and justiciable controversy has arisen and currently exists between Ironshore and KSB regarding the parties' respective rights, duties and obligations under the Ironshore Policy.

9. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Ironshore and KSB.

10. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because KSB is located here and the underlying action at issue in this coverage dispute was filed in the Illinois Circuit Court of the 17th Judicial Circuit, Winnebago County.

I. **BACKGROUND**

    A. **Policies**

12. Ironshore issued a follow form excess Healthcare Professional Liability Policy, No. 001936202, to KSB for March 2, 2016 to March 2, 2017 policy period, with limits of $10

million each claim and $10 million aggregate (the "Ironshore Policy"). A true and correct copy of which is attached hereto as Exhibit A.

13. The Ironshore Policy is excess of **Underlying Insurance**.[1] The **Underlying Insurance** includes an excess policy with limits of $5 million each claim and $5 million aggregate limit, a primary policy with limits of $1 million each claim and $3 million aggregate primary policy issued by Nautilus Insurance Company (No. PFP 1000294) which, in turn, is excess of a $250,000 self-insured retention. A copy of the Primary Policy is attached hereto as Exhibit B.

14. The Ironshore Policy provides excess coverage as follows:

> In consideration of the payment of the premium, and in reliance on the Application, and subject to all of the terms, conditions, limitations and endorsements of this Policy, the **Insurer** agrees to provide the **Insured** with insurance excess of the **Underlying Insurance**, and in conformance with the terms, conditions, limitations, exclusions, definitions and endorsements of the **Primary Policy**, except as otherwise stated in this Policy. In the event that this Policy provides insurance excess of professional liability, the coverage afforded hereunder in respect of such professional liability will apply only on a claims-made basis, regardless of whether the **Primary Policy** provides such coverage on a claims-made or occurrence basis.

Ironshore Policy, § I.

15. The Ironshore Policy follows form to the Primary Policy through the following language:

> The **Insurer** shall pay on behalf of the **Insured** for loss, damages, settlements and defense expenses by reason of exhaustion of the limits of liability of the **Underlying Insurance** by the issuers of such **Underlying Insurance** and/or the **Insured**(s), subject to: (1) the terms and conditions of the **Primary Policy** (as submitted to the Insurer), (2) the Limit of Liability stated in ITEM 3 of the Declarations, (3) the applicable Retroactive Date(s) stated in ITEM

---

[1] Bolded terms are defined in the Policy.

3 of the Declarations, and (4) the terms and conditions of, and all endorsements attached to, this Policy.

Ironshore Policy, § II.

    16.    The Ironshore Policy further provides with respect to **Underlying Insurance**:

> No amendment or modification to the **Primary Policy** or any **Underlying Insurance** shall be binding upon the **Insurer** or effective in changing the terms and conditions of, or extending the coverage or limits of liability afforded by, this Policy without the express written agreement of the **Insurer**.
>
> Notwithstanding anything to the contrary contained in this Policy, the **Insurer** will pay for loss, damages, settlements and defense expenses incurred by the **Insured(s)** only upon reduction or exhaustion of the limits of liability of the **Underlying Insurance**. This Policy shall not drop down for any other reason, including without limitation, the inability to collect (in whole or in part) any limits of liability of the **Underlying Insurance**. The risk of such inability to collect any such limits of liability (in whole or in part), whether by reason of financial impairment or insolvency of any issuer of the **Underlying Insurance**, or for any other reason, is expressly retained by the **Insured(s)** and is not in any way or under any circumstances insured or assumed by the **Insurer**.

Ironshore Policy, § IV.

    17.    The Ironshore Policy contains a notice provision, which requires as follows:

> As a condition precedent to any right to payment of the **Insured** under this Policy, the **Insured** shall give the **Insurer** written notice of:
>
> (1) any claim under the **Underlying Insurance** as soon as possible, but in no event later than required for reporting of claims under the **Primary Policy**; *provided*, that the **Insured** shall give the **Insurer** notice of any claim involving professional liability coverage as soon as practicable, but in no event later than ninety (90) days after the expiration of the **Policy Period**; and
>
> (2) any matter, including a Notice of Circumstance, with respect to which notice has been provided under any **Underlying Insurance**; *provided* that the **Insurer** shall give the **Insurer** notice of any Notice of Circumstance involving professional liability coverage as soon as

>practicable, but in no event later than the expiration of the **Policy Period**.

Ironshore Policy, § VI.

19. The Primary Policy provides professional liability coverage under the sole insuring agreement as follows:

>1. We will pay amounts that the insured becomes legally required to pay as "damages" because of "medical professional injury" that results from acts or omissions in the providing of or failure to provide "health care professional services" by or for an insured.
>
>2. The coverage applies to "medical professional injury" only if:
>
>   a. The injury is caused by a "medical incident" that takes place in the "coverage territory";
>
>   b. The "medical incident" did not occur before the "retroactive date" shown in the Declarations or after the end of the policy period; and
>
>   c. A "claim" or "suit", with respect to the "medical professional injury" is first made against the insured and reported to us in writing in accordance with Paragraph 4 below, during the policy period or an extended reporting period we provide with accordance with Section V- Extended Reporting Period.

Primary Policy, § I.A.

19. Paragraph 4 of the insuring agreement provides:

>4. A "claim" or "suit" shall be considered to be first made at the earlier of the following times:
>
>   a. When notice of such "claim" or "suit" is received by an insured.
>
>   b. When you knew about or should reasonably have know a circumstance was likely to result in a "claim" or "suit."

      c.      When a "claim" or "suit" is reported in writing directly to us or one of our agents.

A "claim" or "suit" received by the insured and reported to us in writing within 30 days after the end of the policy period will be deemed to have been reported on the last day of the policy period.

You must report the "claim", "suit" or "medical incident" in accordance with the terms and conditions of Section IX.A – Notice of Claim or Suit.

20. "Claim" is defined in the Primary Policy as "a demand which seeks 'damages' or any circumstance which is likely to result in a demand for 'damages.'" Primary Policy, § VIII.D.

### B. Underlying Matters

#### 1. Ankney Matter

21. Amber Blankenship, individually and as Administrator of the Estate of Gianna Ankney, and John Ankney as surviving father of Gianna Ankney, filed a complaint against KSB and Dr. Pratip Nag, MD in the Circuit Court of Winnebago County, Illinois, captioned *Amber Blankenship, et al. v. Katherine Shaw Bethea Hospital, et al.*, No. 2016L266 (the "Ankney Lawsuit"). The complaint alleges negligent failure to diagnose and treat pneumonia and failure to properly intubate a three-month old child, leading to her death.

22. The complaint was served on October 20, 2016.

23. Ironshore was provided with a First Notice of Loss on August 24, 2017, which is more than ninety days after the applicable policy expired.

#### 2. Gorski Matter

24. On January 23, 2017, William Gorski and Debra Gorski filed a complaint against KSB and other defendants in the Circuit Court of Lee County, Illinois, captioned William *Gorski, et al. v. Katherine Shaw Bethea Hospital, et al.* (the "Gorski Lawsuit"). The complaint

alleges negligent failure to diagnose and treat arteritis in a 58-year-old male, resulting in blindness.

25. Upon information and belief, KSB received notice of the claim on February 13, 2017.

26. Ironshore was provided with a First Notice of Loss on June 6, 2017, which is more than ninety days after the applicable policy expired.

### 3. Mediation and Settlement Demand

27. On November 25, 2020, KSB requested that Ironshore participate in a mediation to attempt to resolve the Ankney and Gorski matters. In the meantime, plaintiffs in the Ankney Lawsuit demanded "all available insurance" to settle the matter, including Ironshore's entire limits.

## COUNT I
## DECLARATORY JUDGMENT

28. Ironshore re-alleges and incorporates by reference the foregoing paragraphs of this Complaint.

29. The Ironshore Policy states that KSB "shall give [Ironshore] notice of any claim involving professional liability coverage as soon as practicable, *but in no event later than ninety (90) days after the expiration of the Policy Period*[.]" Ironshore Policy, § VI (emphasis added).

30. KSB received notice of the Ankney Lawsuit during the Policy Period for the Ironshore Policy.

31. However, KSB first notified Ironshore of the Ankney Lawsuit more than ninety days after the expiration of the Policy Period in breach of the Policy's condition precedent.

WHEREFORE, for the reasons set forth above, Ironshore respectfully requests that this Court enter a judgment in its favor and:

A. Declare that Ironshore does not have a duty to defend or indemnify KSB in the Ankney Lawsuit.

B. Declare that KSB failed to give Ironshore notice of the Ankney Lawsuit in accordance with terms and conditions of the Ironshore Policy.

C. Award Ironshore such additional declaratory and other relief as the Court finds appropriate.

## COUNT II
## DECLARATORY JUDGMENT

32. Ironshore re-alleges and incorporates by reference the foregoing paragraphs of this Complaint.

33. The Ironshore Policy states that KSB "shall give the [Ironshore] notice of any claim involving professional liability coverage as soon as practicable, *but in no event later than ninety (90) days after the expiration of the Policy Period*[.]" Ironshore Policy, § VI (emphasis added).

34. KSB received notice of the Gorski Lawsuit during the Policy Period for the Ironshore Policy.

35. However, KSB first notified Ironshore of the Gorski Lawsuit more than ninety days after the expiration of the Policy Period, in breach of the Policy's condition precedent.

WHEREFORE, for the reasons set forth above, Ironshore respectfully requests that this Court enter a judgment in its favor and:

A. Declare that Ironshore does not have a duty to defend or indemnify KSB in the Gorski Lawsuit.

B. Declare that KSB failed to give Ironshore notice of the Gorski Lawsuit in accordance with terms and conditions of the Ironshore Policy.

C.  Award Ironshore such additional declaratory and other relief as the Court finds appropriate.

## COUNT III
## DECLARATORY JUDGMENT

36. Ironshore re-alleges and incorporates by reference the foregoing paragraphs of this Complaint.

37. The Ironshore Policy provides in pertinent part:

> No amendment or modification to the **Primary Policy** or any **Underlying Insurance** shall be binding upon the Insurer or effective in changing the terms and conditions of, or extending the coverage or limits of liability afforded by, this Policy without the express written agreement of the **Insurer**.
>
> Notwithstanding anything to the contrary contained in this Policy, the **Insurer** will pay for loss, damages settlements and defense expenses incurred by the **Insured(s)** only upon reduction or exhaustion of the limits of liability of the **Underlying Insurance**. This Policy shall not drop down for any other reason, including without limitation, the inability to collect (in whole or in part) any limits of liability of the **Underlying Insurance**. The risk of such inability to collect any such limits of liability (in whole or in part), whether by reason of financial impairment or insolvency of any issuer of the **Underlying Insurance**, or for any other reason, is expressly retained by the **Insured(s)** and is not in any way or under any circumstances insured or assumed by the **Insurer.**

Ironshore Policy, § IV.

38. The **Underlying Insurance** includes the Primary Policy, issued by Nautilus to KSB.

39. Under the Ironshore Policy, and notwithstanding KSB's late notice, Ironshore has no duty to pay KSB for any loss, damages settlements, or defense expenses until the limits of the Primary Policy or any other **Underlying Insurance** are exhausted.

40. Further, and notwithstanding KSB's late notice, Ironshore has no duty to pay KSB for any loss, damages settlements, or defense expenses incurred in connection with the Ankney

Lawsuit or Gorski Lawsuit in the event that KSB cannot collect any limits of liability under the Primary Policy, or any other **Underlying Insurance**.

WHEREFORE, for the reasons set forth above, Ironshore respectfully requests that this Court enter a judgment in its favor and:

A. Declare that Ironshore has no duty to pay KSB for any loss, damages settlements, or defense expenses incurred in connection with the Ankney Lawsuit or the Gorski Lawsuit in the event that the limits of the Primary Policy or any other **Underlying Insurance** are not exhausted.

B. Declare that Ironshore has no duty to pay KSB for any loss, damages settlements, or defense expenses incurred in connection with the Ankney Lawsuit or the Gorski Lawsuit in the event that KSB cannot collect the limits of the Primary Policy or any other **Underlying Insurance**.

C. Award Ironshore such additional declaratory and other relief as the Court finds appropriate.

Dated: December 16, 2020

/s/ Marc J. Pearlman
Marc J. Pearlman
Timothy W. Kelly
**FROST PEARLMAN, LLC**
2201 Waukegan Rd., Suite 160
Bannockburn, Illinois 60015
Telephone: (312) 261-4550
Fax: (312) 261-4565
mpearlman@frostpearlman.law
tkelly@frostpearlman.law

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

Ronald P. Schiller, Esq. (*pro hac vice* pending)

        Michael R. Carlson, Esq. (*pro hac vice* pending)
        One Logan Square, 27th Floor
        Philadelphia, Pennsylvania 19103
        (215) 496-7020, 7060
        rschiller@hangley.com
        mcarlson@hangley.com

        *Attorneys for Ironshore Specialty Insurance Company*